furnish authentic evidence of a fact already passed into history."

In the case of State ex rel. City of New Orleans v. Louisiana Tax Commission, 171 La. 211, at page 220, 130 So. 46, 49, this court said:

"Besides, section 10 of Act No. 231 of 1920 is a general law; and Act No. 10 of that year is a special or local law, applicable to the parish of Orleans only. Local or special laws are not repealed by implication by general laws relating to the same subject-matter."

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., absent.

169 So. 529

**STATE v. NATIONAL BREWING CO. et al.**

No. 33739.

June 30, 1936.

———◆———

Charles J. Rivet, Sp. Asst. to Atty. Gen., for the State.

A. D. Danziger and Lemle, Moreno & Lemle, all of New Orleans, for appellee.

LAND, Justice.

The National Brewing Company is a corporation operating a brewery in the city of New Orleans, and is a dealer in beer as defined in Act No. 2 of the Extraordinary Session of 1933.

This is a proceeding by rule brought by the Supervisor of Public Accounts for the State of Louisiana to recover of defendant company taxes on barrels of beer, alleged to be delinquent for the period from August 1, 1933, to August 31, 1935.

The taxes are claimed by the state on 907.24 barrels of beer alleged to have been handled, used, or consumed within the

state, on which a tax is fixed by the act at $1 per barrel, or fractional part thereof.

The supervisor of public accounts also sues for penalties, and attorney's fees, and has proceeded against defendant company and its surety, the Employers' Liability Assurance Corporation, on its bond executed in favor of the supervisor of public accounts.

Respondents deny that the 907.24 barrels of beer, on which the supervisor of public accounts is seeking to recover a tax at the rate of $1 per barrel, or fractional part thereof, were handled, used, or consumed in the state of Louisiana as alleged and, consequently, deny that any tax is due to the state of Louisiana thereon.

Respondents aver that the figure of 907.24 barrels of beer in question represents the quantity of beer in the process of manufacture, which was supposed to have been placed in certain tanks on the premises of the National Brewing Company, designated as government tanks, the beer at the time being an incomplete product; and that the amount of beer in process of manufacture was not placed in the tanks.

In the alternative, respondents aver that, if it was so placed, then it was unavoidably ruined, destroyed, or lost thereafter in the manufacturing or bottling process of the complete product, and formed no part thereof; that no one has derived any use, benefit, or advantage whatsoever from this beer, and no tax is due thereon; and that, with all due care in manufacturing and bottling of beer, a small percentage of loss or destruction, such as took place in the instant case, is unavoidable.

After hearing the evidence and argument of counsel, judgment was rendered in favor of defendant in rule, National Brewing Company, and against plaintiff in rule, the state of Louisiana, dismissing plaintiff's rule at the cost of plaintiff.

From this judgment the Supervisor of Public Accounts for the State of Louisiana has appealed.

It appears from the statement filed in evidence by defendant company that 43,240.875 barrels of beer were taken from the government tanks to the bottle shop of that company for the purpose of being bottled, during the period for which the tax is claimed by the state, and that the finished product, when bottled, amounted to 42,333.635 barrels, or a deficiency of 907.24 barrels, on which the delinquent tax is sued for by the state.

The figure of 43,240.875 represents the total barrels of beer as shown by the measuring of the government tanks, and the figure of 42,333.635 represents the number of barrels after being bottled. The beer that is bottled is put in twelve-ounce bottles; and if none of the beer is lost, between the time it comes into the government tanks and is placed in bottles, the 43,240.875 barrels would produce 595,427 cases, or 13.777 cases to each barrel.

The number of cases of beer actually produced in the bottle shop, based on daily computation from August 14, 1933, through August 30, 1935, were 582,928 cases, or 12,499 cases (907.24 barrels) less than should have been produced by the 43,240.875 barrels shown by the measurement of the government tanks.

There is an automatic counter which counts each bottle of beer as it comes through the labeler, and then the stock is checked after that. Each case is counted and checked with the automatic counter.

It appears from the testimony of Mr. Norris, an expert in brewery accounting, that an average of 44 breweries run 13.45 cases of beer for each barrel transferred from the government tanks; and that defendant, National Brewing Company, runs 13.48 cases to each barrel so transferred, or more beer than the average brewery.

"Theoretical possible production" means production *without loss.* The "theoretical possible production" of 13.777 cases per barrel, and the actual 13.48 cases per barrel produced by the National Brewing Company is accounted for by Mr. Levy, the president of defendant company, in his testimony which is quoted below in this opinion.

Mr. Levy is a graduate mechanical engineer holding a degree from Tulane University, and testified that he is thoroughly familiar with the bottling shop processes.

In explaining why some beer, on being transferred from the government tanks to the bottle shop, is either ruined or lost, Mr. Levy testified as follows:

"Beer first goes to the filler, which is a machine which fills bottles accurately to twelve ounces, or any fraction the machine is set for. It is necessary to have beer at a very low temperature to bottle and keep the gas in solution. This filler requires cleaning out, washing, when starting and stopping. There is a definite loss of approxi-

mately one-half a barrel of beer when these occasions occur.

"The number of these startings and stoppings is dependent on the mechanical perfection of this machine and break-downs, rise in temperature, and other conditions beyond ordinary control. After the beer leaves the filler, it goes to a machine where the crowns are put on the bottle. In this operation, the crowns at times chip the edges of the bottles, break the bottles, and the beer is lost at this stage of the operation in addition to the losses mentioned previously. After the beer is crowned, it is then pasteurized and this process consists in taking beer at a temperature approximately 29 degrees Fahrenheit and raising the temperature to something in the neighborhood of 160 to 170 degrees Fahrenheit. The beer at this time is under considerable pressure in bottles, the rise in the pressure being proportional to the temperature. In this pasteurization process, there are numerous explosions on account of imperfections in the bottles and the rising in pressure in these bottles. Naturally, when a bottle of beer explodes, all the beer is lost and wasted. This accounts for the third loss and wastage in the definite manufacture.

"After the beer leaves the pasteurizer, it goes to a machine known as a labelling machine. In this machine the labels are applied. Again, due to the high temperature that the beer comes out of the pasteurizer and the shifting and agitation of the bottle, explosions again take place and beer is lost at this machine for this reason. After the beer leaves the labeller, it goes to the men

who put it into ca.'es. This is a rapid operation, two men loading approximately 120 cases of beer per minute. That is bottles instead of cases; 120 bottles per minute. In this process there is loss and wastage on account of breakage. After the beer is put in the cases and after it is ready to sell, it remains on the floor and due to rising temperature numerous explosions occur with the cases being static on account of imperfect bottles. In the bottling process, going to the filler, we have what is known as 'wild beer.' Wild beer is caused by the gas in solution at low temperatures coming out, which cannot be handled. At times it is absolutely necessary to shut down the plant, the bottle plant, until the beer is quieted so it can be bottled. When this occurs, again you have a definite loss and wastage due to starting and washing out and stopping the filler due to the fact the temperature in the filler has risen considerably while this delay occurs and in order to successfuly bottle beer the temperature must be under 32 degrees. This is necessary in order to keep the gas in solution." T., pp. 26–28.

■ The state relies in this case solely upon the presumption that the facts alleged in its rule, having been duly sworn to, shall be accepted as prima facie true, and as constituting a prima facie case, and that the burden of proof to the contrary rests on defendant. Act No. 14, § 4, 2d Ex.Sess. of 1935.

No witness was placed by the state upon the stand to contradict the testimony either of Mr. Norris, defendant's expert in brewery accounting, or that of Mr. Levy, president of defendant company.

The loss of 907.24 barrels of beer was reported by defendant company in its statement of production filed with the supervisor of public accounts. This loss occurred during a period of two years, and is about 2 per cent. of the number of barrels measured in the government tanks. In our opinion, defendant company has overcome by the evidence adduced the prima facie case of the state.

■ 2. Section 1 of Act No. 2 of the Extraordinary Session of 1933 provides, in part: "That there is hereby levied an excise or license tax of One ($1.00) Dollar per barrel containing not more than thirty-one standard gallons, and at a like rate for any other quantity or for the fractional parts of such barrel, on beer * * * sold, handled, used, consumed or distributed in the State of Louisiana, to be collected as hereinafter set forth."

Section 4 of the act provides, in part: "That every person, firm, corporation or association of persons engaged as a dealer in the handling, distribution, sale, use or consumption of such beer * * * within the State *shall immediately upon producing or manufacturing* of any such beer * * * pay to the Supervisor of Public Accounts the tax levied herein, which is hereby made due and payable *immediately upon said producing or manufacturing* of such beer." (Italics ours.)

The state contends that, under the above provisions, it is entitled to the tax of $1 per barrel upon the 43,240.875 barrels of beer,

as soon as the government tanks were measured showing this quantity and, necessarily, while the beer was in an incomplete manufactured state.

There might be some force in this contention if defendant company manufactured and sold beer in barrels, and the beer had been siphoned directly from the government tanks into barrels, as loss, if any, under such circumstances would be negligible, if at all.

But the evidence shows that defendant company does not manufacture and sell beer in barrels, but only in kegs and bottles, and the state in this case is claiming the tax on such number of cases of bottled beer as constitute a barrel of beer, containing not more than 31 standard gallons.

The various processes through which a bottle of beer must pass, before being placed in cases, has already been shown in this opinion by the testimony of Mr. Levy, and the loss or waste of beer which is occasioned by such processes has been pointed out.

It is obvious, therefore, that to allow the state to levy a tax on the 43,240.875 barrels of beer, *originally contained in the government tanks,* would be for us to permit the state to recover a tax on 907.24 barrels of beer *wasted* in the various processes of bottling. Of course, this cannot be done.

The evidence also shows that beer, after it leaves the government tanks, must be pasteurized in the bottle shop of defendant company before it becomes a completed product for use or sale. Beer will not keep for use or sale unless it is pasteurized, because bacteria would otherwise set in and

fermentation would continue indefinitely, thereby making the bottled beer unfit for use or consumption. Consequently, no bottle beer is sold without pasteurization. T., p. 28. Keg beer is not pasteurized before it is sold because it is not intended to be kept any length of time. T., p. 33.

It is therefore clear that bottled beer is not a completed product until it has been pasteurized; and until the beer has passed through this process and has been placed in cases, no tax on same can be claimed by the state in this case, as the barrels of beer to be taxed can be computed only from the number of cases of beer required to constitute a barrel.

Our conclusion, therefore, is that the judgment of the court below dismissing the rule of the state of Louisiana herein filed against respondents is correct.

Judgment affirmed.